UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DANIEL MARTINEZ,<br><br>　　　　　　　　　Plaintiff,<br>v.<br>JAMES DZURENDA, et. al.,<br>　　　　　　　　　Defendants. | 3:17-cv-00530-RCJ-CLB<br><br>**REPORT AND RECOMMENDATION<br>OF U.S. MAGISTRATE JUDGE**[1] |

This case involves a civil rights action filed by Plaintiff David Martinez ("Plaintiff") against Defendant Jennifer Nash ("Defendant").[2] Currently pending before the Court is Defendant's motion for summary judgment. (ECF No. 27.) Plaintiff filed a motion for extension of time to file an opposition to the motion for summary judgment, which the court granted. (*See* ECF Nos. 35, 38.) Rather than filing an opposition, Plaintiff filed a document entitled, "Motion on Behalf of Plaintiff to ask Judge to Chair and Decide this Case." (ECF No. 39). The court denied this motion and granted another extension of time to file an opposition. (ECF No. 40). The court made clear that if no opposition was filed, the court would construe Plaintiff's prior motion, (ECF No. 39), as an "opposition" to the motion for

---

[1]     This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. This action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]     When this lawsuit was filed, Martinez alleged claims against numerous defendants. However, at screening, the court dismissed all claims except one claim against Defendant Jennifer Nash and "the HDSP Medical Director," who was unnamed at that time. (ECF No. 3). In the screening order, the court clarified that the claim could proceed against the HDSP Medical Director "when Plaintiff learns his identity." (*Id.* at 7). However, Martinez never identified this person by name and no request for substitution has ever been made. Therefore, the court recommends that this defendant be dismissed from this action due to Plaintiff's failure to properly identify the defendant as required by the court's screening order. (*Id.*)

-1-

summary judgment. (*Id.*) Once again, no opposition was received. Rather, Plaintiff filed an additional a second motion requesting the court decide the case. (ECF No. 41)[3]. The court construes Plaintiff's motions requesting the court decide the case, (ECF Nos. 39, 41) as Plaintiff's opposition to the motion for summary judgment. Defendant did not file any reply. Having thoroughly reviewed the record and the documents listed above, the Court recommends that Defendant's motion for summary judgment be granted.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff was an inmate in the custody of the Nevada Department of Corrections ("NDOC").  Proceeding *pro se*, Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against several defendants related to events that took place while he was housed at the High Desert State Prison ("HDSP"). (ECF No. 3.) Pursuant to 28 U.S.C. § 1915A(a), the Court screened Plaintiff's complaint on August 7, 2018.  (*Id.*)  The court determined Plaintiff could proceed with one count against Defendant and the HDSP Medical Director for a violation of Plaintiff's Eighth Amendment Rights due to alleged unsafe conditions of confinement.  (*Id.* at 7).

### B.   Inmate Classification Process

The NDOC has a series of Administrative Regulations ("AR") that proscribe the policies and procedures applicable to various matters related to Nevada's prisons. One regulation, AR 504, sets forth the policy and procedures pertaining to how new inmates are received into NDOC after being sentenced for a crime. (ECF No. 27-8). Pursuant to AR 504, new male inmates are initially received by NDOC at either HDSP or the Northern Nevada Correctional Center ("NNCC") depending on which county in the state the inmate came from. (ECF No. 27-8 at 3-4). For example, any new male inmate who is received into NDOC from Washoe County is sent directly to NNCC. (*Id.* at 3). By contrast, any new male

---

[3]   In light of this Report and Recommendation, Plaintiff's motion to chair and decide this case (ECF No. 41) should be denied as moot.

inmate who is received into the NDOC from Clark County is sent directly to HDSP – regardless of their medical conditions or other issues. (*Id.* at 4).

Once in NDOC custody, AR 504 sets forth the policies and procedures used to determinate which NDOC facility the inmate should ultimately be housed at during their incarceration. (ECF No. 27-8 at 6-10). This is known as the "classification process." (*Id.*) The purpose of the classification process is to determine the needs of the inmate while in custody and to determine the availability of bed and program space at the facility most suitable for the inmate based on several factors. (*Id.*) This process first requires the creation of a detailed "classification summary" that provides information such as the inmate's biographical information; information regarding the offense of conviction; prior criminal history; medical/mental health needs or issues; history of substance abuse or the like. (*Id.* at 6-7). This summary is provided to the "classification committee," which is comprised of the warden or designee; reception case worker; and other appropriate staff. (*Id.* at 7-8). After considering the summary report and various other factors, the classification committee makes an initial a classification recommendation of the specific NDOC facility the committee believes the inmate should be housed at during their stay in custody. (*Id.* at 9). The initial classification recommendation is then forwarded the Offender Management Division, which has the ultimate authority to approve or deny the recommendation. (*Id.* at 9-10).

### C.  **Factual Background**

In April 2016 Plaintiff was sentenced to a term of incarceration in the NDOC and he was received by NDOC on April 26, 2016 from the Clark County Detention Facility. (ECF No. 27-1). Pursuant to AR 504, Plaintiff was directly sent to HDSP because he came from Clark County. (ECF No. 27-1 at 11; 27-8 at 3-4).  At the time he arrived at HDSP, he was 54 years old and was using a wheelchair.  On April 27, 2016, NDOC began Plaintiff's classification process pursuant to AR 504. As part of this process, an initial medical classification form was completed by an intake staff member. (ECF No. 29-1).  On this form,

an NDOC employee indicated Plaintiff would "require a barrier free institution/facility for valid medical reasons" and inmates that required such a facility should not be housed at HDSP. (*Id.*) Due to his medical issues, Plaintiff was initially housed in the infirmary at HDSP. (ECF No. 27-1 at 11; 27-6 at ¶ 5).

On May 20, 2016, the Classification Committee made its initial classification recommendation to transfer Plaintiff to NNCC, which is the NDOC's medical facility. (ECF No. 27-1 at 11). Of significance, the classification notes indicated that although Plaintiff used a wheelchair, he was "ambulatory enough" to board the transport bus for his transfer to NNCC. (*Id.*) While approval for his transfer was pending, it was also determined by the committee that Plaintiff could be placed in general population while at HDSP. (*Id.*) Plaintiff, who had previously been housed at HDSP, indicated that he had no issues or safety concerns about being placed in general population. (*Id.*; ECF No. 27-5 at 2). On June 22, 2016, Plaintiff was moved from the infirmary and placed in an ADA-complaint cell in a general population housing unit at HDSP. (ECF No. 27-1 at 11).

On July 6, 2016, Plaintiff fell out of his wheelchair while being escorted back to his unit from the infirmary. (ECF No. 27-2). The incident report of the accident stated Plaintiff fell out of the wheelchair to the ground and rolled into a drainage ditch. (*Id.* at 2). Plaintiff was immediately assisted by Correctional Officer Smith. Plaintiff reported to CO Smith that "he was alright, and his arm got weak." (*Id.*) CO Smith's report noted a small scratch on Plaintiff's right arm and the nurse was informed. (*Id.*) There is no mention in the incident report that the fall was caused by any obstruction or issue with the facility or the wheelchair itself. Ultimately, Plaintiff returned to his unit without any further incident.

Later that day, July 6, 2016, Plaintiff sent a medical kite requesting a sling for his left arm. (ECF No. 29-2 at 2). Plaintiff indicated his arm and neck hurt due to his fall. He further noted that at the time of the accident, he "didn't think [he] hit that hard but its (sic) really hurting now." (*Id.*) The following day, Plaintiff was seen by medical. Plaintiff was given x-rays and no fractures or other injuries were noted. (ECF No. 29-4 at 2).

On the same day, Plaintiff's transfer to NNCC was approved. Shortly thereafter, he was transported from HDSP to NNCC on July 14, 2016. (ECF No. 27-1 at 11-12). Upon his arrival at NNCC, Plaintiff was again seen by medical staff. (ECF No. 29-4 at 2.) At this time, Plaintiff had a bruise on his abdomen but had no other questions or complaints for the medical staff at NNCC. (*Id.*)

Following these events, Plaintiff filed the instant lawsuit alleging various claims related to his to initial stay at HDSP and the fall from his wheelchair. (ECF No. 4). However, pursuant to the screening order, only a single claim remains against Defendant for a violation of Plaintiff's Eighth Amendment rights based on the alleged unsafe conditions at HDSP. (ECF No. 3). As noted in the screening order, Plaintiff's unsafe conditions claim is based on the following factual contentions in the complaint: (1) HDSP is not an ADA-complaint facility and posed a risk of safety to him due to his use of a wheelchair; (2) HDSP had no ramps or sufficient staff to ensure that disabled inmates could safely move around the facility; (3) Plaintiff brought these concerns directly to Defendant, who essentially told him there was nothing that could be done; and, (4) the "HDSP Medical Director" disregarded the various safety risks to Plaintiff, which caused him to fall out of wheelchair and injure himself when going from the infirmary to his unit. (ECF No. 3 at 7).

### D. **Motion for Summary Judgment**

On October 24, 2019, Defendant filed a motion for summary judgment arguing this case should be dismissed because: there is no evidence Defendant was deliberately indifferent to the conditions of Plaintiff's confinement; Plaintiff failed to exhaust his administrative remedies; and Defendant is entitled to qualified immunity. (ECF No. 27). Plaintiff did not file an opposition to the motion for summary judgment. Rather, Plaintiff filed two motions that were simply requests for the court to "chair and decide" his case, which the court will construe as Plaintiff's opposition. (ECF Nos. 39, 41). Defendant did not reply.

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.     DISCUSSION

#### A.     Eighth Amendment Unsafe Prison Conditions Claim

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates. *Farmer*, 511 U.S. at 832. However, mere negligence is insufficient to show violations of these duties. *Id.* at 835-36.

To establish violations of these duties, the prisoner must establish that the prison official was deliberately indifferent to serious threats to the inmate's safety. *Id.* at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837. In addition, plaintiffs alleging deliberate indifference must also demonstrate that the defendant's actions were both an actual and proximate cause of their injuries. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013).

Furthermore, as with any § 1983 claim, a defendant may be held liable only upon a showing of personal participation by the defendant. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). So, for each defendant, Plaintiff must allege true facts sufficient to show that the particular defendant was deliberately indifferent to his safety and caused his injuries. Thus, Plaintiff cannot hold an assistant warden liable for deliberate indifference to unsafe conditions in § 1983 claims merely because of the position a person held.

Defendant's Motion presents admissible evidence that directly rebuts the contentions in the complaint that any "safety" issue existed at HDSP. First, Defendant's sworn declaration rebuts the claim that HDSP is not "ADA-complaint" based on the fact that Plaintiff was specifically housed in an *ADA-complaint* cell unit following his transfer from the infirmary to general population. (ECF No. 27-6 at ¶ 6). In addition, Defendant presents admissible evidence that staff did accompany disabled inmates when traveling from one location to another at HDSP based upon the fact that Plaintiff was personally accompanied by staff when moving from one part of the facility to another part on the date of his fall. (ECF No. 27-2). Finally, there is no evidence that has been presented that any specific safety hazard or obstacle existed on the HDSP yard on the day Plaintiff fell out of his wheelchair.

1 Rather, Defendant has presented admissible evidence that indicates the reason for
2 Plaintiff's fall was likely related to the fact that Plaintiff's arm got tired. (*Id.*)

3 Plaintiff, on the other hand, has not presented any admissible evidence to contradict
4 this evidence or to create an issue of fact. Plaintiff merely restates HDSP is not "ADA"
5 approved and that he was told that no wheelchairs were allowed on the yard. (ECF No. 39
6 at 1-2; ECF No. 41 at 1). However, he has presented no admissible evidence to establish
7 that HDSP is not ADA-complaint or that he was placed in a housing unit or cell that was not
8 ADA-complaint. Plaintiff also has not presented any admissible evidence to establish that
9 there are no ramps or a lack of staff at HDSP to oversee disabled inmates' movements on
10 the yard. In fact, in his opposition, Plaintiff acknowledges that CO Smith accompanied him
11 the day he fell and saw the incident. (ECF No. 39 at 2). However, he presents no other
12 admissible evidence to establish that HDSP is otherwise unsafe or improper for disabled
13 inmates or that there is not adequate staff to accompany disabled inmates. Finally, Plaintiff
14 has failed to come forward with any admissible evidence to establish that the basis for his
15 fall was due to a safety hazard or obstruction on the yard. As such, Plaintiff has failed to
16 meet his burden to come forward with some evidence to create an issue of fact on these
17 issues and summary judgment is proper on this basis alone. *In re Oracle*, 627 F.3d at 387.

18 However, even if there were issues of fact related to safety risks at HDSP as
19 described by Plaintiff's complaint, in order to survive summary judgment, Plaintiff must come
20 forward with evidence to demonstrate *Defendant* knew of or recklessly disregarded the
21 excessive safety risks posed to Plaintiff and that Defendant personally participated in the
22 decisions that created the risk to Plaintiff. *Id.* at 387; *see also Taylor*, 880 F.2d at 1045.
23 Defendant's Motion indicates that there is no evidence in the record that Defendant had any
24 personal knowledge of any safety risk posed to Plaintiff or other disabled inmates at HDSP.
25 First, although Plaintiff's complaint alleges Plaintiff spoke to Defendant about the alleged
26 safety risks, Defendant has provided a sworn declaration that states she is not familiar with
27

Plaintiff and does not have any recollection of interacting with Plaintiff in any way. (ECF No. 27-6 at ¶¶ 4; 7).

In addition, Defendant's Motion asserts there is no evidence in the record to establish that Defendant personally participated in any of the classification decisions related to Plaintiff's placements at or within HDSP. First, there is no evidence that Defendant personally participated in the decision to send Plaintiff to HDSP when was first received into NDOC custody. Rather, Defendant has provided admissible evidence that establishes Plaintiff was sent to HDSP per AR 504, which states that all male inmates received into NDOC custody from Clark County are sent to HDSP – regardless of their medical condition or history. (ECF No. 27-8 at 4).

In addition, there is no evidence Defendant was involved with the subsequent classification decision made to move Plaintiff from the infirmary to general population. Rather, Defendant has provided a sworn declaration that states that the initial determination to house Plaintiff in the infirmary was also made based on a matter of policy at the facility. (ECF No. 27-6 at ¶¶ 5-6; 7; ECF 27-1 at 11). Moreover, Defendant has provided admissible evidence to establish that the decision to move Plaintiff from the infirmary to general population was made by the classification committee – not Defendant. (ECF No. 27-1 at 11).

Based on the above, the burden shifts to Plaintiff to come forward with admissible evidence to create an issue of fact on these issues. *In re Oracle*, 627 F.3d at 387; *Celotex*, 477 U.S. at 324. However, Plaintiff has not provided any admissible evidence to create an issue of fact that Defendant either "knew" or "purposefully disregarded" any risk of safety to him or any other disabled inmate at HDSP. Moreover, Plaintiff has not provided any admissible evidence to establish Defendant had any involvement—whatsoever—with any of the classification decisions related to Plaintiff while at HDSP. Plaintiff provided no evidence that Defendant was involved with: (1) the decision to send Plaintiff to HDSP when he was first received into NDOC custody; (2) the decision to move Plaintiff from the infirmary to Unit 10; or, (3) the ultimate decision to move Plaintiff from HDSP to NNCC. Finally, Plaintiff

-10-

1 has failed to come forward with any admissible evidence to create an issue of fact that
2 Defendant knew of or disregarded any specific safety hazard on the HDSP yard that caused,
3 or even could have caused, Plaintiff's fall from his wheelchair.

4 Therefore, Plaintiff has failed to meet his burden to establish material issues of fact
5 exist as to his sole remaining Eighth Amendment claim. As such, Defendant's Motion for
6 Summary Judgment should be granted.[4]

### B. Qualified Immunity

Defendant argues even if she committed any constitutional violations, she is entitled to qualified immunity. The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether the right was clearly established, such that it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The evidence must be viewed in the light most favorable to the non-moving party. *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014).

Because this Court finds Defendant is entitled to summary judgment on the merits of the Eighth Amendment claim, there is no reason to reach the qualified immunity issue in this case. Thus, this is not a case where qualified immunity need be determined.

### V. CONCLUSION

Based on the foregoing, the court recommends that Defendants' motion for summary judgment (ECF No. 27) be granted. The parties are advised:

---

[4] Having concluded that summary judgment is proper on the merits of Plaintiff's claim, the court need not address whether Plaintiff properly exhausted his administrative remedies prior to filing this lawsuit.

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant's motion for summary judgment (ECF No. 27) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that Doe Defendant "HDSP Medical Director" be **DISMISSED** from this action;

**IT IS FURTHER RECOMMENDED** that Plaintiff's motion to chair and decide this case (ECF No. 41) be **DENIED** as moot; and

**IT IS FURTHER RECOMMENDED** that clerk enter judgment for Defendant and close this case.

**DATED:** April 15, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**